# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH SWIFT, JR., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL,[1] <br> Acting Commissioner of Social Security, <br><br> Defendant. | CASE NO. 4:17-cv-00081-GBC <br><br><br> (MAGISTRATE JUDGE COHN) <br><br> OPINION AND ORDER TO GRANT PLAINTIFF'S APPEAL AND TO REVERSE AND REMAND DECISION OF COMMISSIONER |

## OPINION AND ORDER TO GRANT PLAINTIFF'S APPEAL AND TO REVERSE AND REMAND DECISION OF COMMISSIONER

This matter is before the undersigned United States Magistrate Judge for decision. Joseph Swift, Jr. ("Plaintiff") seeks judicial review of the Commissioner of the Social Security Administration's decision finding of not disabled. As set forth below, the Court **GRANTS** Plaintiff's appeal and **REVERSES** and **REMANDS** the Commissioner's decision in this case.

## I. STANDARD OF REVIEW

To receive disability or supplemental security benefits under the Social Security Act ("Act"), a claimant bears the burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(a)(3)(A).

The Act further provides that an individual:

---

[1] Effective January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Commissioner Berryhill is automatically substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Plaintiff must demonstrate the physical or mental impairment "by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750. The claimant bears the burden of proof at steps one through four. See Wells v. Colvin, 727 F.3d 1061, 1064 at n.1. (10th Cir. 2013). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Id.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See e.g., 42 U.S.C. § 405(g) ("court shall review only the question of conformity with such regulations and the validity of such regulations"); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the [Administrative Law Judge's ("ALJ's")] findings in order to determine if the substantiality test has been met." Id. The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## II. BACKGROUND

**A.     Procedural History**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging he was unable to work due to mental impairments and back pain beginning August 15, 2011 (as amended). (Tr. 132-54, 169, 998, 1237). Plaintiff attended two hearings in connection with his claims, which were denied by an ALJ. (Tr. 54-98, 1081-1125 (March 2013 hearing), 922-77 (September 2016 hearing); Tr. 13-30, 999-1016 (April 2013 ALJ decision), 888-921 (December 2016 ALJ decision)). Plaintiff was 57 years old on the date of the December 2016 ALJ decision. (See Tr. 20). The Appeals Council did not assume jurisdiction over the case. 20 C.F.R. § 404.984. Plaintiff did not file exceptions after the second ALJ decision, which renders this decision the Acting Commissioner's final decision after remand and ripe for judicial review. 20 C.F.R. §§ 404.987(d); 416.1487(d) (2016).

## III. ISSUES AND ANALYSIS

On appeal, Plaintiff alleges three errors: (1) the ALJ failed to properly develop the record; (2) the ALJ failed to properly consider the medical source opinions; and (3) the ALJ failed to properly consider Plaintiff's credibility. (Pl. Br. at 7, Doc. 17).

**A.     ALJ's Evaluation of the Medical Evidence**

**1.     Opinions in the Record**

Plaintiff contends the ALJ failed to properly evaluate the medical opinions in the record, specifically from Dr. Bauer, Dr. Matosich, and Dr. Woodcock. (Pl. Br. at 10). In the decision, the ALJ reviewed Plaintiff's background before evaluating the medical evidence:

> The claimant has the following severe impairments: Vision Impairment; Diabetes Mellitus; Degenerative Disc Disease; Major Depressive Disorder with Psychotic Features; Generalized Anxiety Disorder.
>
> On February 15, 2016, Grand Lake records stated that the claimant, due to his depression, has little motivation to care for his basic hygiene and to care for his home, where his mother allowed him to reside. Larry Vaught, Ph.D. performed a psychological consultative examination of the claimant on May 17, 2016. At the time of Dr. Vaught's examination, the claimant lived in a camper. He bathed infrequently. The claimant had a driver's license and he drove infrequently. The claimant watched television and slept during the day. The claimant's mother did his laundry. The claimant shopped with his mother. He did some cooking in the microwave. The [ALJ] finds moderate restriction in activities of daily living.
>
> In social functioning, the claimant has moderate difficulties. On February 15, 2016, the claimant told the clinician at Grand Lake that he is very socially isolated only leaving his trailer to go to church or appointments at the clinic. He described having anxiety attacks. He depended on his mother for his basic living needs …
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Dr. Vaught's objective psychological testing showed that the claimant had a fifth-grade reading level. The claimant was able to repeat six digits forward and slowly four digits backward. The claimant scored in the fifth percentile on the Wechsler Adult Intelligence Scale-III with respect to auditory working memory …
>
> As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, each of extended duration. The claimant received inpatient treatment at Jane Phillips Medical Center in June 2011, August 2011, and

after the amended alleged onset date of disability, from October 16-28, 2011. Those records note the claimant with a long past history of major depression, recurrent, severe, and passive suicidal thoughts, PTSD, a history of longstanding abuse of alcohol and marijuana by history though that is in remission. By the time that he discharged from Jane Phillips Medical Center on October 28, 2011, he had improved markedly; however, the claimant was again hospitalized at Jane Phillips Medical Center from January 25-February 8, 2013, with recurrence of severe major depression, with suicidal ideation …

Inpatient treatment at Jane Phillips Medical Center in October 2011, noted the claimant was participating in drug court and spent time going to flea market[s] and selling small items. The records also noted he spent time on hobbies involving computers. Jane Phillips Medical Center inpatient treatment records on October 21, 2011, evidence this level of functioning even during an episode where the claimant had a decrease in his level of functioning to the point he sought help at the hospital … on February 15, 2012, noted a low Global Assessment of Functioning (GAF) Scale score of 43. Earlier, on August 15, 2011, the Grand Lake records showed a GAF Scale score of 41. However, the only category marked "severe" was financial difficulties. All other categories marked "mild," "moderate," or "none" …

There are several opinions from the treating mental health providers at Grand Lake present in this case record. On December 15, 2011, treating psychiatrist, Peteryne Miller, M.D. completed a Mental Status Form. In it, she opined that the claimant is able to remember, comprehend, and carry out simple, but not complex instructions on an independent basis. She went on to say that the claimant is not able to respond to work pressure, supervision, and coworkers. Dr. Miller diagnosed the claimant with major depressive disorder, severe without psychotic features, and generalized anxiety disorder …

The final treating source opinion issued through Grand Lake is by J. Mallgren, M.D. on April 29, 2015. Dr. Mallgren described the claimant as very reclusive making rare social contact. The claimant watched television all day, and related poorly to others. Dr. Mallgren noted severe depression, hopelessness, increased worry, insomnia, blunted affect, memory and concentration problems, variable energy level, amotivation, anhedonia, and episodes of paranoid anxiety / irritability. Dr. Mallgren described the claimant as fully oriented but easily overwhelmed by increased stress. The claimant had poor problem solving skills. However, given this, Dr. Mallgren stated that he recommended continued outpatient mental health care and that the claimant's prognosis is fair. Dr. Mallgren opined that the claimant is able to understand, comprehend, and carry out simple (but not complex) instructions on an independent basis. The claimant's ability to respond to work pressure, supervision, and coworkers Dr. Mallgren rated as poor; however, he did not find the ability to respond to work pressure, supervision, and coworkers is precluded. In this way, Dr. Mallgren's medical opinion is consistent with the limitations given in the claimant's residual functional capacity ("RFC"). The RFC limits the claimant to simple tasks, a job where there is not coworker

> interaction, and where tasks are repetitive, rote, and routine, which the [ALJ] finds would reduce work pressure and the need for supervision to accomplish job tasks.
>
> The [ALJ] accords controlling weight to Dr. Mallgren's medical opinion … However, where Dr. Mallgren uses the non-specific term "poor" ability to respond, the [ALJ] draws from the medical opinion of Dr. Bauer to state more clearly the claimant's mental limitations on a function-by-function basis …
>
> On May 17, 2016, Larry Vaught, Ph.D. performed a psychological consultative examination on the claimant. Dr. Vaught reported that the claimant had been in treatment the last ten years at Grand Lake. He had been clean from drugs for four years. The claimant reported having a seventh-grade education in special education. He last worked 4-5 years before Dr. Vaught's examination … as a janitor at a hospital … Dr. Vaught diagnosed the claimant with polysubstance abuse (in Full Remission), major depressive disorder, recurrent, severe, unspecified anxiety disorder, and Rule Out, PTSD.
>
> Dr. Vaught completed a mental medical source statement at the conclusion of his examination of the claimant. In it, he opined that the claimant has marked limitation in the ability to make judgments on complex work-related decisions. The claimant has mild limitation in the ability to understand, remember, and carry out simple instructions, and in the ability to make judgments on simple work-related decisions. Dr. Vaught found a marked limitation in the ability to interact appropriately with the public, supervisors, and coworkers, and to respond appropriately to usual work situations and to changes in a routine work setting. In so finding, Dr. Vaught stated that, there is severe depression, anxiety, and psychotic features improved with multiple psychotropic medications (which render the claimant sedated) …
>
> The [ALJ] accords moderate weight to Dr. Vaught's medical opinion. Dr. Vaught is an examining psychologist who is an expert in assessing mental functioning under the Social Security Act and Regulations. Dr. Vaught examined the claimant and based his medical opinion on the examination signs and findings, in addition to objective psychological testing. Dr. Vaught finds all marked limitations in areas of social function, however, Dr. Mallgren does not find the ability to respond to work pressure, supervision, and coworkers completely precluded. Dr. Vaught finds no more than mild limitation with respect to simple instructions, and this is consistent with the record as a whole. Dr. Bauer has reviewed all of medical and opinion evidence in the case record, including the medical findings of Dr. Vaught and the treating sources. On balance, her testimony reasonably assesses the RFC of the claimant and is consistent with the record as a whole.

(Tr. 894, 896-97, 901-05). Following this review of Plaintiff's impairments and the medical evidence, the ALJ found Plaintiff had the RFC to perform:

medium work … to occasionally lift or carry, push, or pull 50 pounds, occasionally and 25 pounds frequently. The claimant can sit at least 6 hours out of an 8-hour day and stand or walk a combined total of 6 hours out of an 8-hour day. The claimant can perform tasks requiring depth perception on an occasional basis. Driving should not be a part of the job duties. The claimant should avoid all exposure to hazards such as unprotected heights or dangerous moving machinery. The claimant is limited to simple tasks (defined as unskilled work with a specific vocational preparation (SVP) of 1-2). The claimant is limited to tasks that are repetitive, rote, and routine. The claimant should have a work environment where he would be able to work on these tasks by himself, and where tasks could be done without coworker interaction.

(Tr. 898). The ALJ stated he formulated the RFC from consideration of all of the evidence.

### a. Dr. Bauer

Plaintiff contends the ALJ failed to properly evaluate the opinion of Dr. Bauer. (Pl. Br. at 10). The ALJ summarized the opinion of Dr. Bauer:

At the request of the [ALJ], medical expert, Rebecca L. Bauer, Ph.D., testified at the hearing to clarify the medical evidence regarding the mental impairments of the claimant. Dr. Bauer testified at the hearing, as follows. The claimant received mental health treatment in 2009. However, 2011 was a difficult year for him. There were three psychiatric hospitalizations during 2011. There had been consistent mental health treatment over the last couple of years at Grand Lake Mental Health Center (Grand Lake). Dr. Bauer did not accept a diagnosis of schizophrenia for the claimant. She testified that the claimant had no disorganized thought process or behavior; his thoughts were usually linear … Dr. Bauer diagnosed the claimant with major depressive disorder without psychotic features, given that the reports of psychotic features appear vague. She also diagnosed the claimant with generalized anxiety disorder / post-traumatic stress disorder (PTSD); however, Dr. Bauer testified that it is her opinion that the claimant has more of an anxiety from child trauma / abuse …

Then, with respect to the claimant's work functioning, Dr. Bauer testified as follows. The claimant should have no public interaction; he should do tasks on his own. The claimant needs routine supervision. Although there is no proximity issue with being around others, fewer coworkers around is best. He is limited to understanding and carrying out simple instructions; he is not able to perform complex instructions, but … he is able to do simple tasks. Dr. Bauer emphasized that the claimant needs to do the same tasks on a daily basis, but he has no need for added supervision. Dr. Bauer noted that the claimant does not report side effects from medication. However, he is on quite a bit of medication, and these types of medications could be sedating, and he might tire out quickly due to medications. Dr. Bauer testified that there has been some progress. His doctors are not recommending as much intense treatment, his suicidal ideation has decreased, and

there has been no impatient hospitalization since 2013. Medications reduce or control psychotic symptoms. Dr. Bauer testified that it seems as if drug and alcohol use is not an issue in this case. There is evidence of use in 2010, however, the claimant has shown consistent sobriety over time – he has been sober four years. Dr. Bauer testified that the claimant could withdraw as a way to respond to correction or instruction. Amount and type of medications taken could have an impact on the ability to maintain pace and concentration. Dr. Bauer testified that the claimant would have difficulty maintaining an eight-hour day, five days a week. It might be difficult for him to adjust to a forty-hour week. Dr. Bauer then testified that since the claimant has been out of the workforce for so long, with the types of limitations he has, there would be a period of adjustment. The period of adjustment identified by Dr. Bauer was one to two months, he could adjust, and development of self-confidence at work could help his overall mental health.

(Tr. 899-900). Plaintiff contends the ALJ failed to include Plaintiff's need for extra support at the beginning of employment. (Pl. Br. at 11). Dr. Bauer said it would be difficult for Plaintiff to maintain an eight-hour day and would take one to two months to adjust to work. (Pl. Br. at 954-55). The vocational expert ("VE") testified if a person could not learn their tasks and needed redirection and coaching beyond that point the person would not keep the job. Tr. 975. The ALJ gave great weight to Dr. Bauer's testimony. (Tr. 900). While the ALJ's RFC assessment followed most of the limitations discussed by Dr. Bauer, the ALJ failed to include Plaintiff's need for extra support at the beginning of employment. Since the VE testified Plaintiff would be unable to maintain his employment if he could not adjust in two months, substantial evidence does not support the ALJ's finding Plaintiff could return to work in accordance with Dr. Bauer's opinion.

      **b.**    **Dr. Matosich**

Plaintiff contends the ALJ failed to properly evaluate the opinion of Dr. Matosich. (Pl. Br. at 11). The ALJ summarized the opinion of Dr. Matosich:

> In a physical consultative examination on August 8, 2015, Stephanie Matosich, D.O. … showed an intention tremor in both hands. Dr. Matosich observed that the claimant could not effectively oppose the thumb to the fingertips due to tremor. He could manipulate small objects with tremor, but he could not hold items such as a pen for long periods because of tremor. The claimant was able to pick up an object less than three pounds but he had a tremor while holding it. Dr. Matosich noted it took the claimant long to manipulate a pen in his hand, and grip

8

strength was 4/5 bilaterally. Dr. Matosich stated that the claimant required use of an assistive device to ambulate. The claimant had a walker that day, but he told Dr. Matosich that he had a cane at home that he used around the house. There was a reduced range of motion in the neck, but there was no pain. The claimant had weak heel and weak toe walking, and he displayed thoracic and cervical muscle spasm. Dr. Matosich assessed the claimant with schizophrenia, depression, anxiety, insomnia, hypothyroidism, diabetes mellitus, back pain, spina bifida, degenerative disc disease, hypertension, dyslipidemia, chronic obstructive pulmonary disease ("COPD"), and nicotine dependence.

(Tr. 906). Plaintiff contends the ALJ failed to include Plaintiff's use of an assistive device, as stated by Dr. Matosich. (Pl. Br. at 11-12). Dr. Matosich stated Plaintiff required an assistive device and noted tremors while picking up objects less than three pounds. (Tr. 906). The vocational expert said that a stand/walk limitation to two hours and only occasional use of the upper extremities would preclude competitive employment. (Tr. 973-974). The Commissioner notes the record shows Plaintiff was first diagnosed with peripheral neuropathy in his legs in August 2015. (Tr. 1585). Before August 2015, the record contains reports Plaintiff walked with a cane and other reports Plaintiff had a normal gait. (Def. Br. at 7, Doc. 19). Plaintiff states his use of a cane was observed as early as January 25, 2013. (Pl. Br. at 12) (citing Tr. 881). Plaintiff adds Grand Lake Mental Health consistently noted Plaintiff used a cane. (Pl. Br. at 12) (citing Tr. 1522, 1536, 1540, 1544, 1613, 1666, 1683). Although it is not clear from the record whether Plaintiff has a subscription for a cane, state agency physician Dr. Woodcock cited Plaintiff's sporadic use of a cane in his August 2015 RFC finding for light work. (Tr. 1026, 1028).

   c.  **Dr. Woodcock**

Plaintiff contends the ALJ failed to properly evaluate the opinion of Dr. Woodcock. (Pl. Br. at 12-13). The ALJ summarized the opinions of Dr. Woodcock and other agency consultants:

> [O]n March 6, 2012, State agency medical consultant, Kenneth Wainner, M.D., determined that the claimant's physical impairments are non-severe …
>
> The [ALJ] accords great weight to the medical opinion of State agency medical consultant, Luther Woodcock, M.D. On July 2, 2012, Dr. Woodcock

9

opined that the claimant has the RFC to perform the requirements of medium work with limited visual acuity and depth perception in the right blind eye. Although he was a non-examining physician, he based his opinion on a review of the claimant's medical records and a review of the claimant's consultative examinations. Dr. Woodcock's medical opinion in terms of the claimant's physical limitations is consistent with and supported by the medical evidence in this case, and the [ALJ] has integrated the opinion into the claimant's RFC assessment …

Then later, on August 28, 2015, in a second opinion, Dr. Woodcock limited the claimant to light work with postural limitations. On November 25, 2015, State agency medical consultant, Donald Baldwin, M.D. affirmed Dr. Woodcock's August 2015 assessment. The [ALJ] accords these medical opinions little weight. There is limited record of treatment at the free clinic for the physical impairments, and medium work appears reasonable in light of the totality of the evidence. Based on Dr. Hansen-Pitts' evaluation in May 2016, the claimant's vision has improved but it remains limited. Dr. Woodcock's July 2, 2012 medical opinion is the most consistent with the record over the entire period of adjudication, from August 15, 2011, through the date of this decision [December 6, 2016]. Based on the combined effect of the impairments, the [ALJ] limits the claimant to medium work, with visual limits and he should avoid driving and hazards as described above because of his mental, vision, musculoskeletal, and diabetes mellitus impairments.

(Tr. 908). Plaintiff contends the ALJ failed to limit Plaintiff to light work, in accordance with Dr. Woodcock's second opinion from August 2015. (Pl. Br. at 13). Instead, the ALJ found Plaintiff could perform medium work, as Dr. Woodcock found in July 2012. (Tr. 908).

In July 2012, Dr. Woodcock completed a "physical residual functional capacity assessment." (Tr. 775). It was a check-box type form with a narrative on the last page. (Tr. 775-82). Dr. Woodcock noted Plaintiff alleged back problems, schizophrenia, depression, poor sleep, and anxiety. (Tr. 908). Dr. Woodcock noted an MRI on March 5, 2012 showed moderate degenerative disc disease C5-7 with mild foramen narrowing. Id. Dr. Woodcock noted the ADLs indicated Plaintiff is limited due to joint pain, right eye blindness, depression, problems finishing what he starts, and handling stress. Id. Dr. Woodcock found Plaintiff could perform medium work, i.e., lifting 50 pounds occasionally and 25 pounds frequently and standing / walking or sitting 6 hours in an 8-hour day. (Tr. 776).

In August 2015, Dr. Woodcock completed a "disability determination." (Tr. 1017). Dr. Woodcock noted Plaintiff alleged vision problems, back pain (spina bifida), depression, anxiety, schizophrenia, and diabetes mellitus. (Tr. 1019-20). Dr. Woodcock noted a CT of the lumbar spine on March 26, 2013, showed "developmental anomaly lumbosacral level. Vertebral body height maintained. No significant soft disc bulging or herniation. No spinal or foraminal stenosis. Posterior elements developmental variant lumbosacral spine with a partially transitional[] lumbosacral segment as well as L5 and all sacral segments non-fused posterior elements / spina bifida. There is also a right L5 pars defect which appears old." (Tr. 1028). Dr. Woodcock noted the ADLs indicate Plaintiff can walk 50 feet, and it is unclear that the ambulatory aid is medically necessary. Id. Dr. Woodcock found Plaintiff could perform light work, i.e., lifting 20 pounds occasionally and 10 pounds frequently and standing / walking or sitting 6 hours in an 8-hour day. (Tr. 1026). On November 24, 2015, Donald Baldwin, M.D., affirmed the disability determination as written. (Tr. 1060).

Despite Dr. Woodcock's light work restriction evaluation in 2015 (affirmed by a second state agency consultant), the ALJ found Dr. Woodcock's medium work evaluation in July 2012 as "reasonable in light of the totality of the evidence." (Tr. 908). The ALJ's reasoning for adopting Dr. Woodcock's 2012 medium work evaluation over Dr. Woodcock's 2015 light work evaluation (when Dr. Woodcock had more medical history), is unclear, and therefore, the finding is not supported by substantial evidence. See, e.g., Decker v. Chater, 86 F.3d 953, 954-55 (10th Cir. 1996) (discussing the relevance of significant deterioration following evidence demonstrating Plaintiff's ability to work).

**B.     Other Allegations of Error**

Plaintiff's additional claims of error, including consideration of Plaintiff's credibility and whether his vision was affected for at least 12 months, may be remedied through the case's treatment on remand. Thus, the undersigned declines to address those claims. Accord Williams v. Colvin, No. CIV-13-448-R, 2014 WL 2949470, at *4 (W.D. Okla. June 27, 2014). See, e.g., Wade v. Astrue, 268 F. App'x 704, 706–07 (10th Cir. 2008).

Accordingly, the ALJ's decision lacks substantial evidence a reasonable mind might accept as adequate to support the conclusion.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's appeal and **REVERSES** and **REMANDS** the Commissioner's decision in this case.

SO ORDERED on February 28, 2018.

**Gerald B. Cohn
United States Magistrate Judge**